[Sac. No. 7026. In Bank. Mar. 20, 1959.]

SACRAMENTO AND SAN JOAQUIN DRAINAGE DIS-
TRICT, Respondent, v. PETER J. JARVIS et al., Ap-
pellants.

Peter J. Jarvis and Beulah V. Jarvis, in pro. per., and
Jesse E. Fluharty for Appellants.

Edmund G. Brown, Attorney General, Raymond H. Wil-
liamson and Marcus Vanderlaan, Deputy Attorneys General,
for Respondent.

Harold W. Kennedy, County Counsel (Los Angeles), A. R. Early, Deputy County Counsel, Roger Arnebergh, City Attorney (Los Angeles), Bourke Jones, Assistant City Attorney, Peyton H. Moore, Jr. and Weldon L. Weber, Deputy City Attorneys, Robert E. Reed, Holloway Jones, Norris J. Burke and Robert F. Carlson as Amici Curiae on behalf of Respondent.

McCOMB, J.—Defendants appeal from a judgment awarding them $1,500 for 1.062 acres of land in a condemnation action.

*Facts*: This case came on for trial on February 1, 1956, before the Honorable Gordon A. Fleury, Judge of the Superior Court of Sacramento County. The action was instituted by the Sacramento and San Joaquin Drainage District and concerned real property located in Sacramento County.

Prior to the jury roll call and the *voir dire* examination of the jury, it was stipulated between plaintiff's attorneys and defendants' attorney, in the presence of Judge Fleury in his chambers, that said judge should preside over the trial of the action and that the parties would, and thereby did, waive any disqualification of said judge resulting from the provisions of section 170, subdivision 6, of the Code of Civil Procedure.

Following the foregoing stipulation, the case proceeded to trial, and on April 10, 1956, the judgment here appealed from was entered.

No objection was ever made prior to May 14, 1958, by any of the parties hereto to the qualification of Judge Fleury to preside at the trial. Briefs were filed in the District Court of Appeal, Third Appellate District, and the matter was orally argued and submitted for decision. No question was raised by either party in the District Court of Appeal relative to the trial judge's qualification.

On May 14, 1958, the District Court of Appeal on its own motion ordered that the parties be afforded an opportunity to make such presentation as they desired with respect to the effect on the judgment entered herein of the provisions of section 170, subdivision 6, of the Code of Civil Procedure.

These are the questions here presented:

■ First. *May the disqualification of a judge under the provisions of section 170, subdivision 6, of the Code of Civil Procedure be waived by the parties other than by a stipulation in writing signed by them?*

*Yes.* Section 170 of the Code of Civil Procedure reads in part as follows: ". . . The statement of a party objecting to the judge on the ground of his disqualification, *shall be presented at the earliest practicable opportunity,* after his appearance and discovery of the facts constituting the ground of the judge's disqualification, and in any event before the commencement of the hearing of any issue of fact in the action or proceeding before such judge.

". . . . . . . . . . . . .

"6. In an action or proceeding brought in any court by . . . any . . . drainage district . . . affecting or relating to any real property . . . a judge of the superior court of the county . . . in which such real property, or any part thereof . . . is situated shall be disqualified to sit or act, and such action shall be heard and tried by some other judge requested to sit therein by the chairman of the Judicial Council, unless the parties to the action shall sign and file in the action or proceeding a stipulation in writing, waiving the disqualification in this subdivision of this section provided, in which case such judge may proceed with the trial or hearing with the same legal effect as if no such legal disqualification existed." (Italics added.)

Defendants contend that the disqualification could be waived only by a stipulation in writing, signed by the parties, and that the parties' oral stipulation waiving the disqualification of the judge, made in his chambers prior to the trial and subsequently entered in the minutes of the trial court, did not constitute a waiver of his disqualification.

This court, in passing upon a similar contention relative to whether the provisions of subdivision 3 of section 170 of the Code of Civil Procedure could be waived other than by a written stipulation signed by the parties, held that where an objection to the judge on the ground of his disqualification was not made at the earliest practicable opportunity, it was waived by the conduct of the parties, even though no written stipulation was signed by them.[1]

---

[1]This court, in *Caminetti* v. *Pacific Mutual L. Ins. Co.,* 22 Cal.2d 386, speaking through Mr. Chief Justice Gibson, said at page 390 et seq. [139 P.2d 930]: "It is contended, however, that regardless of the 1927 amendment there can be no estoppel to show that a judge is disqualified, that the filing of a written stipulation in the action constitutes the exclusive method of waiver, and that in the absence of such a waiver all decisions and orders of a disqualified judge are void. . . .

". . . None of the cases cited by appellants indicates that disqualification arising under subdivision 3 of section 170 cannot be waived by

In the present case it is obvious that the parties did not at the earliest practicable opportunity object to the judge's disqualification. On the contrary, they waived his disqualification before the trial was commenced and, in fact, never objected thereto until the matter was called to their attention by the District Court of Appeal several years after the trial had taken place.[2]

Second. *Did the trial court err in sustaining plaintiff's objections to questions asked Ethel Geyer, a witness called by defendants?*

---

failure to urge it at the 'earliest practicable opportunity' as required by the 1927 amendment of the section. Three of the cases, decided before enactment of the amendment, hold that a judgment rendered by a judge disqualified because of *personal interest under subdivision 1* of section 170, which, as distinguished from subdivision 3, contains no provision permitting a written waiver, is invalid, and that no waiver or estoppel by conduct could arise under that subdivision. (Citations.) These decisions are based upon the theory that the subdivision relating to a personal interest of a judge in litigation was intended to protect the state and judiciary as well as the parties to the suit and that therefore a waiver of the provision by a party is immaterial. The reasons of policy there relied upon can have no application to a disqualification arising under subdivision 3 of the section, as the Legislature has declared therein that the parties may avoid its operation by filing a written waiver or consent.

". . . . . . . . . . .
"While the 1927 amendment does not specify in so many words a penalty for failure to urge disqualification at the 'earliest practicable opportunity,' the intention is clear that failure to comply with the provision constitutes a waiver. Any other construction would render the amendment ineffective. Appellants cite *Emerson* v. *Superior Court*, 7 Cal. 2d 685 [62 P.2d 363], and other cases, to the effect that a waiver by conduct or equitable estoppel may not be urged as a substitute for a statutory requirement of a written stipulation. These cases are inapplicable, since the 1927 amendment affords an additional statutory means by which a disqualification arising under subdivision 3 of section 170 may be waived, viz., failure to urge such disqualification at the 'earliest practicable opportunity.'

". . . . . . . . . . .
"Under all the circumstances, the following from the concurring opinion in the Lindsay-Strathmore case, *supra* [182 Cal 315 (187 P. 1056)], appears appropriate: '*It would seem . . . intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.*' [Italics added.] We conclude, therefore, that appellants did not present their objection at the 'earliest practicable opportunity' as required by section 170, *supra*, and that any disqualification of Judge Vickers was waived by their failure to comply with the provisions of the statute."

[2] It should be further noted that the oral stipulation waiving the disqualification of the trial judge was subsequently *entered* in the minutes of the trial court. This entry constituted a writing within the meaning of subdivision 6, section 170, of the Code of Civil Procedure. (*Cf. Dempsey* v. *Market Street Ry. Co.*, 23 Cal.2d 110, 115 [7] [142 P.2d 929]; *Cox* v. *Tyrone Power Enterprises*, 49 Cal.App.2d 383, 394 [10] [121 P.2d 829].)

*No.* The following questions, answers, objections, and rulings occurred during the examination of Ethel Geyer:

Direct Examination by Roy B. Hibbitt, Esq., of counsel for defendants: Q. Will you please state your name?

A. Ethel Geyer.

Q. And where do you live, Mrs. Geyer?

A. 914 Rivera Drive.

Q. And where is that located?

A. Well, it is located in North Sacramento Heights.

Q. And do you know a waterway known as Arcade Creek?

A. Yes.

Q. Does that adjoin your property there?

A. Yes, it does.

Q. And you know Rio Linda Boulevard?

A. Yes.

Q. Where is Rio Linda Boulevard with reference to where you live?

A. Well, you mean the direction?

Q. Yes.

A. It's west.

Q. It's west of your property?

A. Yes.

Q. Now, Mrs. Geyer, your property runs along Rio Linda Boulevard; is that correct?

A. Yes, it does.

Q. And it runs along Rio Linda Boulevard and backs up to Arcade Creek; is that correct?

A. That is right.

Q. And across the rear end of the property that you own there is this levee that has been recently constructed by the State?

A. Yes, sir.

Q. So that you still have property that faces on Rio Linda Boulevard. And do you know the Jarvis property?

A. Yes, sir, I do.

Q. With reference to your property, the Jarvis property is directly across the street; isn't that right?

A. Yes, it is.

Q. And about how much frontage do you have on Rio Linda Boulevard at that place?

Mr. Vanderlaan (counsel for plaintiff) : I will object to that, your Honor. We are not condemning this lady's property.

The Court: Objection sustained.

Mr. Hibbitt: We are trying to establish values, your

Honor, and I think probably by comparative values here, I am bringing this lady in to show the value of her adjacent property.

Mr. Vanderlaan: I am sure that is not admissible, your Honor. She is not an expert.

The Court: Objection sustained.

Mr. Hibbitt: That's all then, Mrs. Geyer. You are excused.

Mr. Vanderlaan: We have no cross-examination.

The rule is settled that in a condemnation proceeding a witness cannot state his *opinion* of the value of neighboring land.[3] (*Haven* v. *Essex County Com'rs.*, 155 Mass. 467 [29 N.E. 1083, 1085]; *Beale* v. *City of Boston*, 166 Mass. 53 [43 N.E. 1029, 1031]; *Brown* v. *City of Scranton*, 231 Pa. 593 [80 A. 1113, 1116 [5]]; *Kansas City & T. Ry. Co.* v. *Vickroy*, 46 Kan. 248 [26 P. 698, 699]; *cf. Consolidated Gas Service Co.* v. *Tyler*, 178 Okla. 325 [63 P.2d 88, 90 [3]]; *Idaho Farm Development Co.* v. *Brackett*, 36 Idaho 748 [213 P. 696, 698].)

In *Old Colony R. Co.* v. *F. P. Robinson Co.*, 176 Mass. 387 [57 N.E. 670], the rule is stated thus: ''The rule has been held very strictly that the opinion of experts as to the value of other lands is not to be received. In *Wyman* v. *Railroad Co.*, 13 Metc. (Mass.) 327, Mr. Justice Dewey uses language as follows: 'Evidence of mere opinion as to the value of property is to be confined exclusively to the subject in reference to which damages are claimed. If you would aid the jury by reference to other articles or other property similarly situated, the evidence in reference to such other articles or other property must be that of facts, and not opinions.' ''

In the present case the proffered testimony fell within the foregoing rule, since defendants' attorney stated to the court, ''I am bringing this lady in to show the value of her adjacent property.''

There is likewise no merit in defendants' contention that Mrs. Geyer was being produced to testify concerning the value of defendants' property, since no such statement was made in the trial court.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., Spence, J., and White, J., pro tem.,* concurred.

---

[3]However, he may give evidence of the prices paid for similar property in the vicinity of the land condemned. (*County of Los Angeles* v. *Faus*, 48 Cal.2d 672, 676 [2a] [312 P.2d 680].)

*Assigned by Chairman of Judicial Council.